**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE: GREYLOCK MCKINNON ASSOCIATES DATA SECURITY INCIDENT LITIGAITON | CASE NO. 1:24-CV-10797 |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'**
**<u>UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT</u>**

Plaintiffs,[1] individually and on behalf of the putative class, submit this Memorandum of Law in Support of their Unopposed Motion for Preliminary Approval of Settlement.

## I.    INTRODUCTION

This action arises from a May 2023 Data Incident where it is alleged certain Personal Information of Greylock McKinnon Associates, Inc.'s clients and its clients' customers was exposed, including: names, health insurance claim numbers, medical information, health insurance information, and Social Security numbers for some persons. On February 23, 2024, Defendant began notifying by letter individuals whose Personal Information may have been impacted.

After months of hard-fought negotiations, the Parties have agreed to a Settlement that provides substantial benefits to the Settlement Class. The Settlement Class is comprised of the Damages Settlement Class and Injunctive Relief Settlement Class. The Damages Settlement Class is comprised of all individuals residing in the United States whose Social Security number was affected by the Data Incident. The Injunctive Relief Settlement Class is comprised of all individuals residing in the United States whose Personal Information was affected by the Data Incident (including both those whose Social Security number was affected and those whose Social Security number was not affected).

For Damages Settlement Class Members, the Settlement provides for a $600,000 non-reversionary common fund from which Damages Settlement Class Members may claim reimbursement for economic losses and cash payments. For Injunctive Relief Settlement Class Members, it provides benefits by way of Defendant's implementation of substantial security-related measures to protect Personal Information, all of which will be paid for by Defendant separate from

---

[1] Unless otherwise stated, all capitalized terms shall have the definitions set forth in the Class Action Settlement Agreement and Release, attached as ***Exhibit A*** to this memorandum. Citations to the Settlement Agreement are abbreviated as "SA ¶ __ .

the Settlement Fund. This injunctive relief has substantial value.

As detailed below, the Settlement falls within the range of possible final approval and includes a comprehensive Notice Program. Defendant does not oppose the Motion.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

On or about May 30, 2023, Defendant discovered suspicious activity related to certain of its computer systems. (ECF No. 20, ¶ 38) Defendant launched an investigation, determining there was unauthorized access and/or acquisition by cybercriminals of certain files and folders within Defendant's network. *Id*. Following an extensive review, Defendant ascertained that the Personal Information of its clients and their clients' customers may have been affected by the Data Incident. *Id*. On February 7, 2024, Defendant began notifying by letter individuals who may have had their Personal Information impacted in the Data Incident. *Id*.

Beginning on March 27, 2024, Plaintiffs brought class action lawsuits arising out of the Data Incident against Defendant seeking to represent the same putative class members. Plaintiffs in these related actions conferred, agreed to, and moved the Court on April 30, 2024, to consolidate them. Such motion was granted on May 17, 2024. Additionally, on May 6, 2024, Plaintiffs in the related actions agreed and moved to appoint Raina Borrelli and Jeff Ostrow as Interim Co-Lead Class Counsel, which the Court granted on June 27, 2024. (ECF Nos. 14-15, 24-25)

On June 17, 2024, Plaintiffs filed a Consolidated Class Action Complaint against Defendant, alleging claims for negligence, negligence *per se*, breach of third-party beneficiary contract, unjust enrichment, invasion of privacy, violation of California's Consumer Records Act, California's Unfair Competition Law, California's Consumer Privacy Act, New Jersey's Customer Security Breach Disclosure Act, and New Jersey's Consumer Fraud Act. (ECF No. 20)

On or around June 2024, the Parties began settlement discussions to explore an early resolution. Joint Declaration of Plaintiffs' Counsel ("Joint Decl.") ¶ 8, attached hereto as ***Exhibit***

*B*. During these discussions, Plaintiffs requested, and Defendant produced, informal discovery necessary to evaluate the strengths and weaknesses of Plaintiffs' claims, including information about the size and scope of and Defendant's response to the Data Incident. *Id.* Over the following months, the Parties' counsel conducted multiple rounds of arms' length negotiations before ultimately agreeing to the Settlement terms on or around October 28, 2024. *Id.* ¶¶ 8-9.

Plaintiffs now bring this Settlement before the Court for Preliminary Approval. Plaintiffs and proposed Class Counsel believe, in consideration of all circumstances and after serious arm's-length settlement negotiations with Defendant, that the proposed Settlement is fair, reasonable, and adequate and provides significant relief to Settlement Class Members. *Id*. ¶¶ 10, 12.

## III.    SUMMARY OF THE SETTLEMENT

### A.   Definition of the Settlement Class

The Parties contemplate certification, for settlement purposes only, of the Settlement Class comprised of two nationwide classes: a Damages Settlement Class and an Injunctive Relief Settlement Class. The Damages Settlement Class includes approximately 20,819 individuals, and the Injunctive Relief Settlement Class includes approximately 998,923 individuals.

> The **Damages Settlement Class** means all individuals residing in the United States whose Social Security number was affected by the Data Incident.

> The **Injunctive Relief Settlement Class** means all individuals residing in the United States whose Personal Information was affected by the Data Incident.

SA ¶¶ 31, 44. The Settlement Class specifically excludes: (1) the judges presiding over this Action, and members of their direct families; (2) the Defendant, its subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest, and its current or former officers and directors; and (3) Settlement Class Members who submit a valid Request for Exclusion prior to the Opt-Out Deadline. SA ¶¶ 33, 45.

**B. The Settlement Fund and Cash Settlement Class Member Benefits**

Defendant will make available to the Damages Settlement Class a non-reversionary Settlement Fund of $600,000 that will be used to pay for (1) all Cash Payments to, and the cost of Credit Monitoring for, Damages Settlement Class Members who submit Valid Claims; (2) any Service Awards awarded to Class Representatives; (3) any attorneys' fees and costs awarded to Class Counsel; and (4) all Settlement Administration Costs. *Id*. ¶¶ 72, 76. Damages Settlement Class Members also receive the Injunctive Relief described below. *Id*. ¶ 77.

Damages Settlement Class Members are entitled to submit Claims for a Cash Payment and/or Credit Monitoring. When submitting a Claim for a Cash Payment, Damage Settlement Class Members may elect Cash Payment A, for Documented Losses, if applicable, and/or Cash Payment B to receive a *pro rata* share of the Net Settlement Fund. *Id.* ¶ 76.

**1)    Cash Payment A – Documented Losses -** Damages Settlement Class Members may submit a Claim for a Cash Payment A for up to $10,000.00 each upon presentment of Documented Losses related to the Data Incident. *Id*. ¶ 76(a). Documented Losses, include, without limitation, unreimbursed losses relating to fraud or identity theft; professional fees including attorneys' fees, accountants' fees, and fees for credit repair services; costs associated with freezing or unfreezing credit with any credit reporting agency; credit monitoring costs that were incurred on or after the Data Incident through the Claims Deadline; and miscellaneous expenses such as notary, fax, postage, copying, mileage, and long- distance telephone charges. *Id*. ¶ 37.

To receive a Cash Payment for Documented Losses, a Damages Settlement Class Member must elect Cash Payment A on the Claim Form attesting under penalty of perjury to incurring Documented Losses. Damages Settlement Class Members will be required to submit reasonable documentation supporting the Documented Losses to be reviewed and approved by the third-party Settlement Administrator. *Id*. ¶ 76(a).

2)      **Cash Payment B – *Pro Rata* Cash Payment -** In addition to Cash Payment A, all Damages Settlement Class Members may elect Cash Payment B on the Claim Form, a *pro rata* share of all cash remaining in the Net Settlement Fund after all other payments are made. *Id*. ¶ 76(b). The payment amount will be based upon the amount in the Net Settlement Fund and the number of Damages Settlement Class Members who make Valid Claims for Cash Payment B. *Id*.

3)      **Credit Monitoring -** Damages Settlement Class Members may also elect one year of Credit Monitoring services, regardless of whether they submit a claim for other benefits. *Id*. ¶ 76(c). Credit Monitoring costs will be paid for out of the Settlement Fund prior to Cash Payments.

**C.  The Settlement Terms and Benefits to the Injunctive Relief Settlement Class**

In order to secure Settlement Class Members' Personal Information, Defendant has undertaken reasonable steps to further secure its systems and environments. *Id.* ¶ 77. Defendant implemented the following since the Data Incident and will agree to maintain these systems in place for three years subject to upgrading to new versions or replacing with equivalent or superior software if the software listed is discontinued or in Defendant's reasonable business judgment: Mimecast, CrowdStrike, Microsoft BitLocker, multi-factor authentication, upgraded routers, updated password policy, updated security for VPN access. Also, Defendant has identified the cost of these security-related measures as at least $195,000, all of which will be paid by Defendant separate from the Settlement Fund. *Id*. This injunctive relief has substantial value. *Id*.

**D.  Notice Program, Claims Process, and Settlement Administration**

The Notice Program was structured to apprise Settlement Class Members of the Settlement and their respective rights, in compliance with the requirements of Rule 23(e) and due process, with the Parties agreeing to propose Epiq Class Action Claims & Solutions, Inc. as the Settlement Administrator, subject to Court approval. *Id.* ¶ 64. There is also a robust Claims process. The details of the Notice Program and Claims process are discussed in Section VI, *infra*.

### E.  Attorneys' Fees, Expenses, and Service Awards

In recognition of the time and effort the Class Representatives expended in pursuing this Action and in fulfilling their obligations and responsibilities as Class Representatives, and of the relief conferred on all Settlement Class Members by the Settlement, Class Counsel shall request a Service Award for the Class Representatives in the amount not to exceed $2,500.00 each. *Id.* ¶ 109. Class Counsel shall apply to the Court for an award of attorneys' fees of up to 33.33% of the Settlement Fund, plus reimbursement of costs. *Id*. ¶ 110.

## IV.    THE PROPOSED SETTLEMENT WARRANTS PRELIMNARY APPROVAL

The Settlement is the result of vigorous litigation, the exchange of documents and other informal discovery, and extensive arm's length negotiations among the Parties. Joint Decl. ¶¶ 8-11. The Settlement provides valuable benefits and monetary compensation to Settlement Class members as well as favorable changes to Defendant's data security. The Settlement compares favorably to previous data breach settlements when weighed against the risks associated with continued litigation. Having weighed the likelihood of success and inherent risks and expense of litigation, Plaintiffs and proposed Class Counsel strongly believe that the proposed Settlement is "fair, reasonable, and adequate[.]" Fed. R. Civ. P. 23(e)(2); Joint Decl. ¶ 12.

### A.  Standards for Preliminary Approval

Public policy highly favors settlement as the means to resolve disputes. *U.S. v. Comunidades Unidas Contra La Contaminacion,* 204 F.3d 275, 280 (1st Cir. 2000); *Hotel Holiday Inn de Isla Verde v. N.L.R.B.,* 723 F.2d 169, 173 (1st Cir. 1983) (settlement agreements "will be upheld wherever possible because they are a means of amicably resolving doubts and preventing lawsuits."). This policy is especially applicable to complex class action litigation. *See, e.g., In re Lupron Mktg. and Sales Practices Litig.,* 228 F.R.D. 75, 88 (D. Mass. 2005).

Class action settlements must be approved by the Court. Fed. R. Civ. P. 23(e). However, at

the preliminary approval stage the Court need only make an initial fairness evaluation that "the court will likely be able to" approve the settlement and certify the proposed settlement class(es). Fed. R. Civ. P. 23(e)(1)(B). "If so, the final decision on approval is made after the [final] hearing." *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 57 (D. Mass. 2005).

Federal Rule of Civil Procedure 23(e)(2), sets forth the following factors the court must consider in determining if the class action settlement is "fair, reasonable, and adequate":

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

*See Jean-Pierre v. J&L Cable TV Servs., Inc.*, 538 F. Supp. 3d 208, 212–13 (D. Mass. 2021).[2]

---

[2] Note, prior to the 2018 amendment to the Federal Rule of Civil Procedure 23(e), district courts in the First Circuit considered a variety of factors to determine if a class action settlement was fair, adequate, and reasonable. *See In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 206 (D. Me. 2003), judgment entered, No. MDL 1361, 2003 WL 21685581 (D. Me. July 18, 2003) ("[T]he appellate courts consider some or all of the following factors: (1) comparison of the proposed settlement with the likely result of litigation; (2) reaction of the class to the settlement; (3) stage of the litigation and the amount of discovery completed; (4) quality of counsel; (5) conduct of the negotiations; and (6) prospects of the case, including risk, complexity, expense and duration."); *Roberts v. TJX Companies, Inc.*, No. 13-CV-13142-ADB, 2016 WL 8677312, at *6 (D. Mass. Sept. 30, 2016) (applying the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) (The *Grinnell* factors are "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation."); *In re Relafen Antitrust Litig.*, 231 F.R.D. at 72 (recognizing there is "no single test in the First Circuit for determining the fairness, reasonableness, and adequacy of a proposed class action settlement"

As explained below, the proposed Settlement is well within the range of reasonableness and meets the criteria identified by Rule 23(e).

## B. The Rule 23(e) Factors Are Satisfied

### 1. Rule 23(e)(2)(A) – Class Representatives and Class Counsel Adequately Represented the Class

The first factor is the adequacy of Class Counsel and the class representatives. Proposed Class Counsel satisfy their duty to provide adequate representation by prosecuting the case "competently and vigorously . . . without conflicts of interest with the class." *In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 36 n.12 (1st Cir. 2009). On the other hand, class representatives must, at a minimum, have: (1) "the ability and incentive to represents the interests of the class vigorously," (2) "obtained adequate counsel," and (3) no "conflict between [his or her] claims and those asserted on behalf of the class." *Jean-Pierre*, 538 F. Supp. 3d at 212 (citing *Ark. Teacher Ret. Sys. v. State St. Bank & Tr. Co.*, 404 F. Supp. 3d 486, 508 (D. Mass. 2018)).

Proposed Class Counsel are highly experienced class action litigators who have, and will continue to, vigorously prosecute the interests of the Class Members. *See* Joint Decl., ¶¶ 1-2, Exs. 1-2 (attached thereto). Indeed, proposed Class Counsel vigorously litigated the Action to date, including: (i) conducting a thorough pre-suit investigation that resulted in the preparation of a detailed complaint; (ii) gathering Plaintiffs' documents and relevant information; (iii) filing the complaint; (iv) commencing informal discovery; (viii) requesting and reviewing relevant informal discovery; (viii) engaging in extensive settlement discussions; and (ix) achieving a very favorable

---

and noting courts have used both the *Compact Disc* factors and *Grinnell* factors.); *but see In re Ranbaxy Generic Drug Application Antitrust Litig.*, No. 19-MD-02878-NMG, 2022 WL 4329646, at *2 (D. Mass. Sept. 19, 2022) (noting both the Rule 23(e) factors and the *Grinnell* factors after the 2018 amendment to the Federal Rules of Civil Procedure). Plaintiffs only address the Rule 23(e) factors in the interest of brevity, but the overlapping traditional factors are met too.

Settlement on behalf of the Settlement Class. *Id*. ¶¶ 12-15. Additionally, Class Counsel have no conflicts of interest. Thus, there is no reason to doubt proposed Class Counsel's adequacy.

Plaintiffs have also adequately represented the Settlement Class. The proposed Class Representatives do not have antagonistic or competing interests with unnamed members of the Settlement Class. They share the identical objectives of establishing liability and obtaining damages and injunctive relief. There are no conflicts, meaning the representatives provide adequate representation of the Settlement Class as a whole.

Based on the foregoing, this first factor supports Preliminary Approval of the Settlement.

## 2. Rule 23(e)(2)(B) – The Settlement was Negotiated at Arm's-Length

The next factor examines the negotiation process. "A settlement is presumed to be reasonable when it is achieved by arm's length negotiations conducted by experienced counsel." *Nat'l Ass'n of Deaf v. Massachusetts Inst. of Tech.*, No. 3:15-CV-30024-KAR, 2020 WL 1495903, at *4 (D. Mass. Mar. 27, 2020) (citation omitted). The Settlement here is the product of extensive arm's-length negotiations conducted by experienced counsel. Joint Decl. ¶¶ 8-12. It reflects the progress of months of negotiations, the preparation of detailed informal discovery, and the review of relevant informal discovery. *Id*. The Parties only reached the Settlement after four months of intensive negotiations, during which they engaged in adversarial, arm's-length negotiations to reach the final terms of the Settlement. *Id*.

Because of Class Counsel's considerable experience in handling consumer class actions, especially data breach class actions, they were capable of assessing the Action's strengths and weaknesses. *See Id*. ¶ 12-15, Ex. 1-2. The experience of the attorneys involved demonstrates the Settlement Class was well-represented at the bargaining table. Indeed, it is Class Counsel's opinion that the relief for the Settlement Class is a great result. *Id*. ¶¶ 12-15. Accordingly, as this Court has held, "[w]hen the parties' attorneys are experienced and knowledgeable about the facts and claims,

their representations to the court that the settlement provides class relief which is fair, reasonable and adequate should be given significant weight." *Rolland v. Cellucci*, 191 F.R.D. 3, 10 (D. Mass. 2000). Thus, this factor favors Preliminary Approval of the Settlement.

### 3. Rule 23(e)(2)(C) – The Relief Provided is Adequate

#### a. *Rule 23(e)(2)(C)(i) – Costs, Risks, and Delay of Trial and Appeal*

In the absence of a settlement, Plaintiffs would have faced "a significant element of risk." *In re Lupron*, 228 F.R.D. at 97. "Data breach" actions "are particularly risky, expensive, and complex." *Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-cv-01415-CMA-SKC, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019). "Beyond the novel state of the law in regards to identity theft, there are inherent issues of causation" that would have resulted in protracted and uncertain litigation. *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2010 WL 3341200, at *4 (W.D. Ky. Aug. 23, 2010); *Koenig v. Lime Crime, Inc.*, No. CV 16-503 PSG (JEMx), 2018 WL 11358228, at *3 (C.D. Cal. Apr. 2, 2018) (same); *In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-MD-02583-TWT, 2016 WL 6902351, at *5 (N.D. Ga. Aug. 23, 2016) (same); *In re Premera Blue Cross Customer Data Sec. Breach Litig.*, No. 3:15-MD- 2633-SI, 2019 WL 3410382, at *21 (D. Or. July 29, 2019) (same).

The $600,000 non-reversionary Settlement Fund to pay Cash Payments and for Credit Monitoring represent a very favorable result for the Settlement Class Members. Damages Settlement Class Members who submit a Valid Claim Form have the opportunity to receive *all of* the following benefits: a Cash Payment A for up to $10,000.00 upon presentment of Documented Losses related to the Data Incident; Cash Payment B, a *pro rata* share of all cash remaining in the Net Settlement Fund; and Credit Monitoring consisting of one year of one bureau credit monitoring. SA ¶¶ 72, 76. Moreover, Settlement Class Members will receive significant injunctive relief by way of Defendant's implementation of the measures described above to

further secure its systems and environments. *Id*. ¶ 77.

These Settlement benefits compare very favorably to other approved data breach class action settlements. *See, e.g., Kondo et al. v. Creative Services, Inc.*, Case No. 1:22-cv-10438-DJC (D. Mass. 2023) (ECF Nos. 27-1 and 39 (data breach settlement with benefits of up to $3,000 of out-of-pocket losses, 2-years of identity theft protections, and payments for lost time); *Barr v. Drizly, LLC f/k/a Drizly, Inc. et al*., Case No. 1:20cv11492 (D. Mass. 2021) (ECF Nos. 52, 73) (data breach settlement with *pro rata* cash payment of $14.00 to be adjusted based on number of claims submitted, credits toward cost of services, and security improvements by the defendant).

Here, the Settlement provides for a $600,000 non-reversionary common fund, or approximately $28.81 per Damage Settlement Class Member.[3] This far exceeds the cash value in other exemplary data breach settlements. *See, e.g., Marshall v. Lamoille Health Ptrs. Inc.*, No. 2:22-cv-00166, ECF Nos. 38, 40 (D. Vt. Sept. 30, 2024) ($540,000 for approx. 59,000 members); *Mendoza, et al. v. Crystal Bay Casino LLC*, No. 3:23-cv-00092-MMD-CLB, ECF Nos. 39, 46 (D. Nev. Aug. 5, 2024) ($675,000 for approx. 94,000 members); *May, et al. v. Five Guys Enter. LLC*, No. 1:23-cv-00029, ECF Nos. 28, 31 (E.D. Va. July 12, 2024) ($700,000 for approx. 38,000 class members); *Tucker v. Marietta Area Health Care*, No. 2:22-CV-00184, ECF Nos. 35, 38 (S.D. Ohio Dec. 8, 2023) ($1,750,000 for approx. 214,000 members); *Kondo v. Creative Serv.*, No. 1:22-cv-10438-DJC, ECF Nos. 34, 39 (D. Mass. Sept. 7, 2023) ($1,200,000 for approx. 165,000 members); *Lutz v. Electromed, Inc.*, No. 21-cv-2198-KMM-DTS, ECF No. 73 (D. Minn. July 6, 2023) ($825,000 for approx. 46,000 members). Comparison of a simple amount recovered per class member in other data breach settlements demonstrates that this Settlement provides an

---

[3] This is a calculation of the Settlement's total value per Damages Settlement Class Member, not the dollar amount that each Damages Settlement Class Member will receive, which will depend on various factors as described above.

excellent recovery and is well within the range of approval. Moreover, the benefits made available under the Settlement would not be guaranteed if facing trial. Indeed, absent the instant Settlement, Plaintiffs would have had to survive numerous motions by Defendant (including to dismiss the complaint and for summary judgment), prevail at trial, and secure an affirmance of their victory on appeal in order to recover damages. Moreover, they would also need to certify and maintain a class, over Defendant's likely opposition, all while facing the rising costs of litigation. Plaintiffs would also have difficulty collecting a larger judgment against Defendant, if one were awarded, because it is a small company without insurance coverage for this incident. Instead, the Parties crafted a Settlement providing substantial monetary benefits, while avoiding the expense and delay of continued litigation. Joint Decl. ¶¶ 12-15. The Court's acceptance and approval of the Settlement is preferable in comparison to the continuation of lengthy, expensive, and uncertain litigation.

Thus, this factor also weighs in favor of Preliminary Approval of the Settlement.

### b. Rule 23(e)(2)(C)(ii) – Effectiveness of the Proposed Method of Distributing Relief

Pursuant to Rule 23(e)(2)(C)(ii), the Court should consider the effectiveness of the parties' "proposed method of distributing relief to the class, including the method of processing class member claims." The plan of allocation here was extensively negotiated between highly competent counsel. As set forth above, the Settlement makes available to Damages Settlement Class Members: (i) Cash Payment A for any Documented Loss for up to $10,000 for any Documented Losses related to the Data Incident; and (ii) Cash Payment B for a *pro rata* share of all cash remaining in the Net Settlement Fund. SA ¶ 76(a). Damages Settlement Class Members may also enroll in one year of Credit Monitoring paid for by Defendant. *Id*. ¶ 76(c). All Claims will be processed by the Settlement Administrator, who will determine the validity of all claims. *Id*. ¶¶ 83. Finally, the Settlement provides for verification of meaningful data security enhancements to

better protect the personally identifiable information of the Settlement Class. *Id*. ¶ 77.

### c. *Rule 23(e)(2)(c)(iii) – Attorney's Fees*

The proposed attorney's fee amount is reasonable and fair. Plaintiffs will seek Court approval of attorneys' fees and expenses not to exceed one-third of the Settlement Fund ($600,000), plus reimbursement of costs. *Id*. ¶ 110. This request is within the range of approval. *See In re Neurontin Mktg. & Sales Practices Litig*., No. 04-cv-10981-PBS, 2014 WL 5810625, at *3 (D. Mass. Nov. 10, 2014) ("[N]early two-thirds of class action fee awards based on the percentage method were between 25% and 35% of the common fund."); *see also Mazola v. May Dep't Stores Co.,* No. 97 Civ. 10872, 1999 WL 1261312, at *4 (D. Mass. Jan. 27, 1999) ("[I]n this circuit, percentage fee awards range from 20% to 35% of the fund. This approach mirrors that taken by the federal courts in other jurisdictions."). While Plaintiffs will fully brief their fee request by separate motion, the attorneys' fees, expenses, and service awards sought do not present a barrier to Preliminary Approval.

### d. *Rule 23(e)(2)(c)(iv) – Agreements to be Identified under Rule 23(e)(3)*

There are no additional agreements "required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C)(iv).

As such, Rule 23(e)(2)(C) supports Preliminary Approval.

### 4. **Rule 23(e)(2)(D) - Class Members Are Treated Equitably**

The final Rule 23(e)(2) inquiry is whether the Settlement Agreement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). First, the distinction between Damages Settlement Class Members and Injunctive Settlement Class Members is supported by the distinction between the type of data - Social Security numbers – that was accessed by cybercriminals. Joint Decl. ¶ 13. Because the theft of Social Security numbers presents a significantly greater risk of fraud compared with the other Personal Information involved in the Data Incident, the Parties'

negotiated a proposed Settlement that provides significant relief to all Settlement Class Members and additional relief to Damages Settlement Class Members, who experienced the theft of Social Security numbers. *Id*. A Social Security number is typically required to assemble a package of data used by cybercriminals, known as a "Fullz"[4] package, to impersonate a victim to perpetuate fraud, whereas the other Personal Information exposed in this matter is not.

The proposed Settlement provides injunctive relief designed to secure the Personal Information of all Settlement Class members, without any preferential treatment of the named Plaintiffs or any segments of the class. The Settlement further provides a common fund of S600,000, where Damages Settlement Class Members are able to recover damages for Documented Losses and an additional cash payment. *See* SA ¶ 77. In satisfaction of Rule 23(e)(2)(D), the reimbursement for Documented Losses and cash payments allows Damages Settlement Class Members to obtain relief based upon the specific types of damages they incurred and treats every claimant in those categories equally relative to each other.

Class Counsel also intend to apply for Service Awards for Plaintiffs. *Id*. ¶ 111. Courts have held it is appropriate to make modest payment in recognition of the services that such plaintiffs perform in successful class action litigation. Service Awards to the Class Representatives is appropriate here given the efforts and participation of Plaintiffs in the litigation and does not

---

[4] "Fullz" is fraudster speak for data that includes the information of the victim, including, but not limited to, the name, address, credit card information, ***Social Security number***, date of birth, and more. As a rule of thumb, the more information you have on a victim, the more money that can be made off of those credentials. Fullz are usually pricier than standard credit card credentials, commanding up to $100 per record (or more) on the dark web. Fullz can be cashed out (turning credentials into money) in various ways, including performing bank transactions over the phone with the required authentication details in-hand. Even "dead Fullz," which are Fullz credentials associated with credit cards that are no longer valid, can still be used for numerous purposes, including tax refund scams, ordering credit cards on behalf of the victim, or opening a "mule account" (an account that will accept a fraudulent money transfer from a compromised account) without the victim's knowledge.

constitute preferential treatment. *See In re Relafen Antitrust Litig.*, 231 F.R.D. at 82 ("Because a named plaintiff is an essential ingredient of any class action, an incentive award can be appropriate to encourage or induce an individual to participate in the suit."). "In granting incentive awards to named plaintiffs in class actions, courts consider not only the efforts of the plaintiffs in pursuing the claims, but also . . . rewarding representative plaintiffs for being instrumental in obtaining recoveries for persons other than themselves." *Bussie v. Allmerica Fin. Corp.*, No. 97-40204, 1999 U.S. Dist. LEXIS 7793, at *11-12 (D. Mass. May 19, 1999) (approving $5,000 service awards). *See also In re Sovos Compliance Data Sec. Incident Litig.*, No. 1:23-CV-12100 (D. Mass.) (approving $2,500.00 service awards).

Thus, all of the Rule 23(e) factors support Preliminary Approval.

## V.    THE SETTLEMENT CLASS SHOULD BE CERTIFIED

### A.  The Rule 23(a) Factors Are Met

**1.    Numerosity -** Numerosity is met if "the class is so numerous that joinder of all members is impracticable[.]" Fed. R. Civ. P. 23(a)(1). Numerosity is satisfied here because Defendant's records indicate that there are approximately 20,819 Damages Settlement Class Members and 998,923 Injunctive Relief Settlement Class Members. Joint Decl. ¶ 13

**2.    Commonality -** Class certification requires there to be "questions of law or fact common to the class[.]" Fed. R. Civ. P. 23(a)(2). Commonality is a low hurdle, and class members need not present factual or legal situations that are "precisely identical." *S. States Police Benevolent Ass'n, Inc. v. First Choice Armor & Equip., Inc.*, 241 F.R.D. 85, 87 (D. Mass. 2007). Here, there are numerous issues of fact and law common to the Settlement Class, including, *inter alia*, whether: (a) Defendant had a duty to safeguard the Settlement Class' Social Security numbers and other Personal Information; (b) Defendant was negligent in maintaining adequate data security protocols; and (c) the Settlement Class Members were injured by having their Social Security numbers and

other Personal Information potentially accessed by unauthorized parties while on Defendant's systems. *See In re Brinker Data Incident Litig.*, No. 3:18-cv-686-TJC-MCR, 2021 WL 1405508, at *8 (M.D. Fla. Apr. 14, 2021) (finding these issues common to the class).

    **3.**    **Typicality -** Rule 23(a)(3) is satisfied when the plaintiffs' "injuries arise from the same events or course of conduct as do the injuries of the class and when plaintiff[s'] claims and those of the class are based on the same legal theory." *In re Credit Suisse-AOL Sec. Litig.*, 253 F.R.D. 17, 23 (D. Mass. 2008). Here, each Plaintiff's and Settlement Class member's claims and legal arguments arise out of the same series of events – the Data Incident, which exposed their Social Security Numbers and/or Personal Information. Typicality is satisfied.

    **4.**    **Adequacy of Representation -** Rule 23(a) also requires the representative plaintiffs "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This inquiry has two components: "First, there must be an absence of potential conflict between the named plaintiff and the potential class members, and second, the counsel chosen by the class representative must be qualified, experienced, and able to vigorously conduct the proposed litigation." *Glass Dimensions, Inc. v. State St. Bank & Tr. Co.*, 285 F.R.D. 169, 179 (D. Mass. 2012). Here, Plaintiffs' interests are consistent with, and not antagonistic to, the interests of other Settlement Class Members. *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985) (finding the adequacy requirement satisfied when "the interests of the representative party will not conflict with the interests of any of the class members"). Indeed, Plaintiffs and Class Members all share the same objectives, factual and legal positions, and interest in establishing Defendants' liability. Additionally, Plaintiffs have retained qualified and competent counsel, whose adequacy is discussed in greater detail above. See Section IV.B.1., *supra*; Joint Decl., ¶¶ 12, Ex. 1-2.

### B. The Settlement Class Satisfies Rule 23(b)(3)

    A class meets the certification requirements of Rule 23(b)(3) when it meets two criteria.

First, common questions of law or fact must "predominate" over any purely individual questions. Fed. R. Civ. P. 23(b)(3). Second, class treatment should be superior to other available methods for the fair and efficient adjudication of the controversy. *See id*.

 **1.** **Predominance -** Predominance requires that "questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen, Inc. v. Conn. Retirement Plans and Trust Funds*, 568 U.S. 455, 459 (2013). Here, the common factual and legal questions presented in the commonality discussion above predominate over individual ones. *See, e.g.*, *In re Heartland Payment Sys., Inc. Cust. Data Sec. Breach Litig*., 851 F. Supp. 2d 1040,, 1059 (S.D. Tex. 2012) (finding predominance satisfied in data breach case); *In re Anthem, Inc. Data Breach Litig*., 327 F.R.D. 299, 312–15 (N.D. Cal. Aug. 15, 2018) (finding predominance was satisfied because "Plaintiffs' case for liability depend[ed], first and foremost, on whether [the defendant] used reasonable data security to protect Plaintiffs' personal information," such that "the claims rise or fall on whether [the defendant] properly secured the stolen personal information," and that these issues predominated over potential individual issues); *In re The Home Depot, Inc., Customer Data Sec. Breach Litig*., 2016 WL 6902351, at *2 (same).

 **2.** **Superiority -** Finally, certification of this Settlement as a class action is superior to other methods available to fairly, adequately, and efficiently resolve the claims of the Settlement Class. Here, the proposed Settlement Class is comprised of approximately 20,819 Damages Settlement Class members and 998,923 Injunctive Relief Settlement Class members, and, if each were to pursue their claims against Defendant individually, they would each need to provide nearly the same, if not identical, legal and factual arguments and evidence. Allowing this case to move forward as a class action will: (i) avoid congesting a court with the need to repetitively adjudicate such actions; (ii) prevent the possibility of inconsistent results; and (iii) allow class members an opportunity for redress they might otherwise be denied. Accordingly, this Settlement is the

superior method for adjudicating the claims of the Settlement Class. *See Smilow v. Southwestern Bell Mobile Sys., Inc.*, 323 F.3d 32, 41-42 (1st Cir. 2003) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating" relatively small potential recoveries).

### C. The Injunctive Settlement Class Satisfies Fed. R. Civ. P. 23(b)(2)

A Fed. R. Civ. P. 23(b)(2) class can be certified where the Rule 23(a) factors are met and where the defendant "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Here, the Settlement contemplates a Rule 23(b)(2) Injunctive Relief Settlement Class to deliver the benefits of Defendant's cybersecurity improvements to all Settlement Class members. Certification of that class is appropriate because each member had their Personal Information impacted by the Data Incident and each stands to benefit from Defendant's class-wide cybersecurity improvements, which ensure their Personal Information that Defendant still holds is protected moving forward. *See, e.g., Nat'l Ass'n of the Deaf v. Mass. Inst. of Tech.*, No. 3:15-cv-30024-KAR, 2020 U.S. Dist. LEXIS 53643, at *8 (D. Mass. Mar. 27, 2020) (certifying a Rule 23(b)(2) class for settlement purposes where the plaintiffs asserted a "common contention in this litigation generally applicable to all members of the class") (internal quotations omitted).

## VI. THE PROPOSED NOTICE PROGRAM AND CLAIM PROCESS SHOULD BE APPROVED

The Court should also approve the proposed means of notifying Damages Settlement Class Members. Fed. R. Civ. P. 23(c)(2).[5] Due process and Rule 23(e) do not require that each Class

---

[5] Notice is not required for the Injunctive Settlement Class under Rule 23(b)(2). *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 363, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011) (""[Rule] 23(b)(2)

Member receive notice, but rather, that class notice be "reasonably calculated . . . to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank and Trust Co*., 339 U.S. 306, 314 (1950). "Individual notice must be provided to those class members who are identifiable through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175 (1974).

Here, the Notice Program is designed to directly reach as many members of the Damages Settlement Class as possible. No later than ten days after entry of the Preliminary Approval Order, Defendant will provide the Settlement Administrator with the name and last known physical address of each Damages Settlement Class member. SA ¶ 85. Within 30 days after entry of the Preliminary Approval Order the Settlement Administrator will deliver Postcard Notice via U.S. Mail to the Damages Settlement Class. *Id*. ¶ 86. Notice will also be published on the Settlement Website. *Id*.

The Settlement Administrator will establish a Settlement Website to submit Claim Forms online and allow the Settlement Class to view and download the Preliminary Approval Order, Long Form Notice, Claim Form, Motion for Final Approval, Application for Attorneys' Fees, Costs and Service Awards, the Final Approval Order, and any other documents as the Parties agree to post or the Court orders posted. *Id*. ¶ 70. A toll-free number will also be available for calls to the Settlement Administrator with Settlement-related inquiries, and answer frequently asked questions of individuals in the Settlement Class who call with or otherwise communicate such inquires.

The Long Form Notice will include the procedures to be followed to opt-out of the Settlement or object to the Settlement and/or Application for Attorneys' Fees, Costs, and Service Awards. *Id*. ¶¶ 88-89. Damages Settlement Class Members who do not wish to participate in the

---

does not require that class members be given notice and opt-out rights.."); *Jermyn v. Best Buy Stores, L. P.*, 2012 U.S. Dist. LEXIS 90289, at *33 (S.D.N.Y. June 27, 2012) ("courts have often approved settlements with no class notice" for Rule 23(b)(2) classes) (citing cases).

settlement may opt-out of the settlement by mailing written notice to the Clerk of the Court, Class Counsel, Defendant's Counsel, and the Settlement Administrator no later than the last day of the Opt-Out Period (30 days before the original Final Approval Hearing date). *Id.* ¶ 89. Additionally, Damages Settlement Class Members may object to the Settlement by submitting a valid written objection no later than no later than the last day of the Objection Period (30 days before the original Final Approval Hearing date). *Id.* ¶ 90.

The proposed Notices are plain and easily understood. See SA, Ex. 1-2. The Notices describe the claims, the Settlement relief, and Damages Settlement Class members' rights and options, including the deadlines and means of submitting a Claim Form (Exhibit 3 to the Agreement), objecting, and/or appearing at the Final Approval Hearing. *Id.* Plaintiffs submit that the Notice Program is reasonable and provides the best notice practicable under the circumstances. *Hill v. State Street Corp.*, 2015 WL 127728, at *15 (D. Mass. Jan. 8, 2015) (quoting *Greenspun v. Bogan*, 492 F.2d 375, 382 (1st Cir. 1974) ("The Notice is clearly reasonable as it 'fairly apprise[s] the prospective members of the class of the terms of the proposed settlement and of the options that are open to them.'") (internal citations omitted).

The Court should also approve the Claim Form and Claims Process. The Claim Form is easily understood and may be submitted online via the Settlement Website or U.S. Mail sent to the Settlement Administrator. *Id.*, Ex. 3. The Settlement Administrator will review all Claim Forms to determine their validity, eligibility, and the type and amount of the Cash Payment to which the Settlement Class Member may be entitled, and the Claim review process is robust. *Id.* ¶¶ 96-103.

## VII.    CONCLUSION

Plaintiffs respectfully request the Court grant this Motion by entering the proposed Preliminary Approval Order, attached hereto as ***Exhibit C***, which includes a schedule prior to the Final Approval Hearing. Plaintiffs request the hearing be set for **June 30, 2025**, or soon thereafter.

Dated: January 29, 2025                          Respectfully submitted,

                                     By: */s/ Raina C. Borrelli*
                                          Raina C. Borrelli (*pro hac vice*)
                                          **STRAUSS BORRELLI PLLC**
                                          One Magnificent Mile
                                          980 N. Michigan Avenue, Suite 1610
                                          Chicago, Illinois 60611
                                          Telephone: (872) 263-1100
                                          Facsimile: (872) 263-1109
                                          raina@straussborrelli.com

                                          Jeff Ostrow (*pro hac vice*)
                                          **KOPELOWITZ OSTROW P.A.**
                                          1 West Las Olas. Blvd., Ste. 500
                                          Fort Lauderdale, FL 33301
                                          Telephone: (954) 332-4200
                                          ostrow@kolawyers.com

                                          *Interim Co-Lead Counsel for Plaintiffs and the
                                          Putative Class*

<u>**CERTIFICATE OF SERVICE**</u>

I, Raina C. Borrelli, hereby certify that on January 29, 2025, I electronically filed the

foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of

such filing to counsel of record, via the ECF system.

DATED this 29th day of January, 2025.

STRAUSS BORRELLI PLLC

By: <u>*/s/ Raina C. Borrelli*</u>
　　Raina C. Borrelli
　　STRAUSS BORRELLI PLLC
　　One Magnificent Mile
　　980 N Michigan Avenue, Suite 1610
　　Chicago IL, 60611
　　Telephone: (872) 263-1100
　　Facsimile: (872) 263-1109
　　raina@straussborrelli.com