**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE: GREYLOCK MCKINNON ASSOCIATES DATA SECURITY INCIDENT LITIGAITON | CASE NO. 1:24-CV-10797<br><br>**CONSOLIDATED CLASS ACTION** |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'**
**UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**
<u>**AND APPLICATION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARD**</u>

Plaintiffs[1] and Class Counsel submit this memorandum of law supporting their Unopposed Motion for Final Approval of Class Action Settlement and Application for Attorney's Fees, Costs, and Service Awards.

## I.    INTRODUCTION

On January 31, 2025, this Court preliminarily approved the Settlement (D.E. 48), which provides for substantial Settlement Class benefits, including: (1) a non-reversionary $600,000.00 Settlement Fund, from which Damages Settlement Class Members with Valid Claims will receive cash compensation and Credit Monitoring; and (2) valuable injunctive relief of comprehensive security measures, which have a cost of at least $195,000.00. The Settlement Fund will also be used to pay all Settlement Administration Costs, any Court-awarded attorneys' fees and costs to Class Counsel, and any Court-awarded Service Awards to the Class Representatives. Plaintiffs now seek Final Approval of the Settlement and Class Counsel's Application for Attorney's Fees, Costs, and Service Awards. With no opt-outs or objections, the Settlement meets all the criteria for Final Approval. The overwhelmingly positive response from the Settlement Class affirms the Court's initial conclusion that the Settlement is fair, reasonable, and adequate; thus, the Motion for Final Approval should be granted.

## II.    PROCEDURAL HISTORY

On or about May 30, 2023, Defendant discovered suspicious activity related to certain of its computer systems. Consolidated Class Action Complaint ("CAC") (D.E. 20) ¶ 38. Defendant launched an investigation and determined there was unauthorized access and/or acquisition by cybercriminals of certain files and folders within Defendant's network. *Id*. Following an extensive review, Defendant ascertained the Private Information (i.e., names, Social Security numbers,

---

[1] All capitalized terms herein shall have the same meaning as those defined in Section II of the Settlement Agreement and Releases, which is attached as ***Exhibit A***.

Medicare Health Insurance Claim Numbers, medical information and/or health insurance information) of its clients and their clients/customers may have been affected by the Data Incident. *Id*. On February 7, 2024, Defendant began notifying by letter individuals who may have had their Personal Information impacted in the Data Incident. *Id*.

Beginning on March 27, 2024, numerous plaintiffs brought class action lawsuits against Defendant arising from the Data Incident. On April 30, 2024, they moved to consolidate, which the Court granted on May 17, 2024. Also, on May 6, 2024, the plaintiffs moved to appoint Raina Borrelli and Jeff Ostrow as Interim Co-Lead Class Counsel, which the Court granted on June 27, 2024. D.E. 14-15, 24-25.

On June 17, 2024, Plaintiffs filed a CAC against Defendant, alleging claims for negligence, negligence *per se*, breach of third-party beneficiary contract, unjust enrichment, invasion of privacy, violation of California's Consumer Records Act, California's Unfair Competition Law, California's Consumer Privacy Act, New Jersey's Customer Security Breach Disclosure Act, and New Jersey's Consumer Fraud Act, all arising out of the Data Incident. D.E. 20.

On or around June 2024, the Parties began settlement discussions to explore an early resolution. Joint Declaration of Class Counsel ("JD") ¶ 5, attached as ***Exhibit B***. During the Parties' settlement discussions, Defendant produced informal discovery necessary to evaluate the strengths and weaknesses of Plaintiffs' claims, including information about the size and scope of the Data Incident and Defendant's response thereto. *Id.* Over the following months, the Parties' counsel conducted multiple rounds of arms' length negotiations before agreeing on the terms of the Settlement on or around October 28, 2024. *Id.* ¶¶ 8-9.

On January 29, 2025, the Parties executed the Agreement and Plaintiffs moved for Preliminary Approval. D.E. 46, 46-1. The Court entered a Preliminary Approval Order on January

31, 2025, which the Parties sought to amend, and the Court granted on May 15, 2025. *See* D.E. 48, 58, 60. This Motion follows.

## III.    SUMMARY OF THE SETTLEMENT AND BENEFITS

### a.    Settlement Class - The Settlement Class consists of:

The **Damages Settlement Class** means all individuals residing in the United States whose Social Security number was affected by the Data Incident and who were mailed notice of the Data Incident by the Defendant or its designee prior to May 1, 2025.

The **Injunctive Relief Settlement Class** means all individuals residing in the United States whose Private Information was affected by the Data Incident

SA ¶¶ 33, 45 (as amended, *see* D.E. 61). The Settlement Class specifically excludes: (1) the judges presiding over this Action, and members of their direct families; (2) the Defendant, its subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest, and its current or former officers and directors; and (3) Settlement Class Members who submit a valid Request for Exclusion prior to the Opt-Out Deadline. SA ¶¶ 33, 45.

### b.    Settlement Consideration

**1.    Damages Settlement Class -** If approved, the Settlement requires Defendant to create a non-reversionary common $600,000.00 Settlement Fund for the Damages Settlement Class that will be used to pay (1) Cash Payments (Cash Payment A and/or Cash Payment B) and Credit Monitoring for Damages Settlement Class Members; (2) Service Awards for Class Representatives; (3) any attorneys' fees and costs; and (4) Settlement Administration Costs. *Id*. ¶¶ 69, 73. Damages Settlement Class Members also receive the Injunctive Relief described below.

<u>*Cash Payment A – Documented Losses*</u> – Each Damages Settlement Class Member may submit a Claim for up to $10,000.00 upon presentation of Documented Losses related to the Data Incident. *Id*. ¶¶ 37, 76(a). To receive Cash Payment A, Damages Settlement Class Members must

elect Cash Payment A on the Claim Form, attesting under penalty of perjury to incurring Documented Losses, and submit reasonable documentation in support thereof. *Id*. ¶ 76(a).

  <u>*Cash Payment B – Pro Rata Cash Payment*</u> - In addition to Cash Payment A, Damages Settlement Class Members may also elect to receive Cash Payment B, which is a *pro rata* share of all cash remaining in the Net Settlement Fund after payment of claims for Cash Payment A and for Credit Monitoring, attorney's fees and costs awarded to Class Counsel and Settlement Administration Costs. *Id*. ¶ 76(b). The amount of the payment will be based upon the amount remaining in the Net Settlement Fund after these payments and the number of Damages Settlement Class Members who make Valid Claims for Cash Payment B. *Id*.

  <u>*Credit Monitoring*</u> - Damages Settlement Class Members may claim one year of credit monitoring services, regardless of their claim(s) for other benefits. *Id*. ¶¶ 29, 76(c).

  **2. Injunctive Relief Settlement Class -** Defendant has implemented and agreed to maintain data security measures—including Mimecast, CrowdStrike, Microsoft BitLocker, multi-factor authentication, upgraded routers, updated password policy, updated security for VPN access, and annual penetration testing—for three years, costing at least $195,000.00, which will be paid for by Defendant separate from the Settlement Fund. SA ¶ 77. These measures provide substantial value to the Settlement Class. *Id*.

## IV. NOTICE PROGRAM, CLAIMS PROCESS, OPT-OUTS AND OBJECTIONS

  **a. Notice Program -** After this Court entered the Preliminary Approval Order, the Settlement Administrator—with the help of the Parties—successfully disseminated Notice to the Settlement Class. As of May 22, 2025, a Postcard Notice was delivered to 20,605 of the 20,829 unique, identified Damages Settlement Class members, which equates to a direct notice reach rate of 98.9% of the Settlement Class. Declaration of Settlement Administrator ("Admin. Decl.") ¶ 28, attached as ***Exhibit C***. Specifically, the Settlement Administrator sent Postcard Notice to 20,802 Settlement

Class members on March 3, 2025, and to 19 Settlement Class members on May 8, 2025. *Id.* ¶ 24. Any Postcard Notices returned as undeliverable were re-mailed to any new address available through USPS information, or to better addresses that were found using a third-party address lookup service. *Id.* ¶ 26. As of May 22, 2025, the Settlement Administrator has remailed 340 Postcard Notices. *Id.* Additionally, a Long Form Notice and Claim Form ("Claim Package") were mailed to all persons who requested one via the toll-free telephone number or other means. *Id.* ¶ 27. As of May 22, 2025, the Settlement Administrator has mailed five Claim Packages as a result of such requests. *Id.*

Pursuant to the Notice Program, relevant documents, including the Settlement Agreement, Amendment to Settlement Agreement, Complaint, Answer to the Complaint, Preliminary Approval Order and amendment thereto, Long Form Notice, and Claim Form, were posted to the Settlement Website, www.GMADataSecuritySettlement.com. *Id.* ¶ 29. The Settlement Website went live on March 3, 2025, and contains information about the Settlement (e.g., relevant dates, answers to frequently asked questions, instructions for opting-out, objecting, or submitting a Claim Form, and Settlement Administrator contact information). *Id.* As of May 22, 2025, there have been 440 unique visitor sessions to the Settlement Website, and 1,378 web pages have been presented. *Id.* Also, on March 3, 2025, the Settlement Administrator established an automated toll-free telephone number that allows callers to learn more about the Settlement in the form of recorded answers to frequently asked questions and request a Claim Package be mailed to them. *Id.* ¶ 30. It is available 24 hours per day, 7 days per week. *Id.* As of March 22, 2025, there have been 54 calls to the toll-free number (i.e., 165 minutes of use). *Id.*

**b. Claims Process -** The timing of the Claims Process was structured to ensure that all Settlement Class members had adequate time to review the terms of the Settlement, compile documents supporting their Claim, and decide whether to submit a Claim, opt-out of, or object to

the Settlement. A Settlement Class Member may submit a Claim even if objecting. The Claims Process is straightforward, and Settlement Class Members can submit Claims either through the Settlement Website or by hard copy mailed to the Settlement Administrator. Admin. Decl. ¶ 33. As of May 22, 2025, the Settlement Administrator has received 673 Claim Forms (87 online and 586 paper). *Id.* ¶ 34. Settlement Class members continue to submit Claim Forms and may do so until June 9, 2025. *Id.* Claim Form submissions are still subject to final audits, including the full assessment of each Claim's validity and a review for duplicate submissions. *Id.* Class Counsel will update the Court at the Final Approval Hearing as to the number of Claims.

   **c.  Opt-Outs and Objections -** The Objection and Opt-Out Periods end on June 9, 2025. *Id.* ¶ 32. As of May 22, 2025, the Settlement Administrator has received no requests for exclusions and is aware of no objections to the Settlement. *Id.*

   **d.  Attorneys' Fees, Costs, and Service Awards -** Plaintiffs request an attorneys' fee award of $200,000.00 (i.e., 33.33% of the total Settlement Fund) and reimbursement of costs in the amount of $5,177.12. SA ¶ 110; JD ¶¶ 30, 39. Plaintiffs also request Service Awards in the amount of $2,500.00 for each Class Representative. SA ¶ 109.

## V.    THE COURT SHOULD FINALLY APPROVE THE SETTLEMENT

   **a.  The Settlement is Fair, Reasonable, and Adequate -** This Court previously determined it was likely to find the Settlement negotiated by the Parties is fair, reasonable, and adequate under Fed. R. Civ. P. 23. D.E. 48 ¶ 7. In making this determination, the Court considered the fact that the Settlement is the product of arm's-length negotiations conducted by experienced and knowledgeable counsel, the current posture of the Action, the benefits of the Settlement to the Settlement Class, and the risk and benefits of continuing litigation to the Settling Parties and the Settlement Class. *Id.* The Court should now finally determine the Settlement is fair, reasonable, and adequate and enter Final Approval.

1.    **Standard for Final Approval -** Across many courts, but particularly in the First Circuit, approval of a class action settlement is a staged process. *See Manual for Complex Litigation* (Fourth) § 21.632 (2015). First, the court determines whether the proposed settlement should be preliminarily approved, and notice of the settlement distributed to the proposed settlement class, which this Court has already done in this Action. *See* D.E. 48. Then, after considering any objections received from settlement class members, the court determines whether to grant final approval of the proposed settlement.

The established standard for final approval is whether a proposed settlement is "fair, reasonable, and adequate." *Jean-Pierre v. J&L Cable TV Servs., Inc.*, 538 F. Supp. 3d 208, 212 13 (D. Mass. 2021). The court should conduct such a determination "within the context of the public policy favoring settlement." *Hill v. State St. Corp.*, U.S. Dist. LEXIS 2166 (D. Mass. Jan. 8, 2015). As such, "[w]here the parties negotiated at arm's length and conducted sufficient discovery, the district court must presume the settlement is reasonable." *Robinson v. National Student Clearinghouse*, 14 F.4th 56, 59 (1st Cir. 2021) (internal quotations omitted). Further, "the district court enjoys considerable range in approving or disapproving a class action settlement, given the generality of the standard and the need to balance [the settlement's] benefits and costs." *Id.* (internal quotations omitted). The factors the court must ultimately consider in determining if the class action settlement is fair, reasonable, and adequate include:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

*See Jean-Pierre*, 538 F. Supp. 3d at 212–13 (citing Fed. R. Civ. P. 23(e)(2)). Considering these factors, the Settlement warrant Final Approval.

**2.    The Presumption in Favor of Reasonableness Applies Here -** The Settlement was the product of multiple rounds of arm's-length negotiations over several months. JD ¶ 5. During the Parties' settlement discussions, Defendant produced informal discovery necessary to evaluate the strengths and weaknesses of Plaintiffs' claims, including information about the size and scope of the Data Incident and Defendant's response thereto. *Id.* As such, the Settlement is the product of serious, informed, non-collusive negotiations between the Parties. *See also Robinson*, 14 F.4th at 59 (affirming settlement approval where parties engaged in pre-mediation discovery and negotiated settlement shortly after filing the action); *see also Carter v. Vivendi Ticketing United States LLC*, 2023 U.S. Dist. LEXIS 210744, at *15 (C.D. Cal. Oct. 30, 2023) (approving early settlement in data breach case reached after informal discovery and collection of publicly available information).

In reaching this resolution, Class Counsel was also able to utilize their significant experience in class action litigation, having negotiated hundreds of class action settlements (including dozens of complex data breach settlements). JD ¶ 2 and Exs. 1-2 thereto. Through its investigation and experience, Class Counsel fully evaluated whether "Plaintiffs' claims would be dismissed before trial, the amount Plaintiffs might receive at trial, the number and novelty of the complex issues, the risk that Plaintiffs would receive less than the Settlement Relief or take nothing, and the risk of a reversal of any judgment in favor of the Plaintiffs." *In re Prudential Ins. Co. of Am. SGLI/VGLI Contract Litig.*, 2014 U.S. Dist. LEXIS 170100, at *11 (D. Mass. Dec. 9, 2024); *Carter*, 2023 U.S. Dist. LEXIS 210744 at *15 ("With all that information, the parties were able to realistically value the scope of Defendant's potential liability and assess the costs, risks, and delay of continuing to litigate.").

**3.   The Relief Obtained is More than Fair, Reasonable, and Adequate -** Plaintiffs and Class Counsel obtained a strong result for the Settlement Class. JD ¶ 8. In addition to obtaining injunctive relief for Settlement Class Members, the $600,000.00 Settlement for 20,829 Damages Settlement Class members (i.e., approximately $29.80 per person[2]), is in line with or exceeds other settlements in cases involving data breaches. The instant Settlement compares very favorably to other similar common fund data breach settlements from around the country:

| Case Name | Class Members | Settlement Amount | Per Person |
|---|---|---|---|
| *Rossi, et al. v. Claire's Stores, Inc., et al.*, No. 1:20-cv-05090 (N.D. Ill.) | Approx. 60,842 | $350,000.00 | $5.75 |
| *Marshall v. Lamoille Health Partners, Inc.*, No. 2:22-cv-00166-wks (D. Vt.) | 59,381 | $540,000.00 | $9.09 |
| *Lutz et al. v. Electromed Inc.*, No. 0:21-cv-02198-KMM-DTS (D. Minn.) | 47,429 | $825,000.00 | $17.39 |
| *May et al. v. Five Guys Enterprises LLC*, No. 1:23-cv-00029-CMH-JFA (E.D. Va.) | 37,922 | $700,000.00 | $18.46 |
| *James et al. v. DAVACO Inc., et al.*, No. 3:21-cv-02318-M (N.D. Tex.) | 14,193 | $540,000.00 | $38.05 |

Further, the Settlement will provide real monetary benefits to Damages Settlement Class Members including: (1) a Cash Payment for up to $10,000.00 upon presentment of Documented Losses related to the Data Incident; (2) a Cash Payment comprised of a *pro rata* share of all cash remaining in the Net Settlement Fund; and (3) the ability to elect Credit Monitoring. SA ¶ 76.

---

[2] Given the average claims rates in data breach cases (1-3%), the actual amounts claimants receive greatly exceed the per person calculation, providing a useful benchmark when comparing cases.

As outlined in the Motion for Preliminary Approval, Plaintiffs faced significant risks and costs should they have continued to litigate the Action. First, the Court might not certify a class. JD ¶ 9. "Data breach cases . . . are particularly risky, expensive and complex" due at least in part to the cutting-edge, innovative nature of data breach litigation and the rapidly evolving law. *Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-cv-01415- CMA-SKC, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019); *see also In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 17-MD-2800, 2020 WL 256132, *15 (N.D. Ga. Mar. 17, 2020) (in data breach cases "[t]he law . . . remains uncertain and the applicable legal principles have continued to evolve"). Thus, data breach cases generally face substantial class certification hurdles. *See, e.g., In re Blackbaud, Inc., Customer Data Breach Litigation*, No. 3:20-mn-02972-JFA, 2024 WL 21555221 (D.S.C. May 14, 2024) (denying class certification in a data breach action after concluding proposed classes were not ascertainable); *In re TJX Cos. Retail Sec. Breach Litig.*, 246 F.R.D. 389 (D. Mass. 2007) (denying class certification in cybersecurity incident class action litigation). Maintaining class certification is often an equally challenging hurdle. *See e.g., Marriott Int'l Inc. Customer Data Sec. Breach Litig.*, 78 F.4th 677 (4th Cir. Aug. 18, 2023) (decertifying classes).

Second, Plaintiffs' claims might not have survived, or survived in full, on a class-wide basis after a motion to dismiss, motion for summary judgment, and/or *Daubert* motions on damages methodologies, among other motions. JD ¶¶ 13, 43. To the extent the law has gradually accepted this relatively new type of litigation, the path to a class-wide monetary judgment remains unpaved, particularly concerning damages. *See, e.g., Southern Independent Bank v. Fred's, Inc.*, No. 2:15-CV-799-WKW, 2019 WL 1179396, at *8 (M.D. Ala. Mar. 13, 2019) (causation not satisfied for certification purposes in data breach class action). Indeed, the damages methodologies, while theoretically sound in Plaintiffs' view, remain untested in a disputed class certification setting and unproven in front of a jury.

Third, time was not on the Settlement Class members' side. While the Parties would be litigating the foregoing issues, potentially for years to come, Damages Settlement Class members would have been exposed to the ongoing risk of identity theft without the protection of Credit Monitoring offered by the instant Settlement. Thus, a reasonable settlement is more practical than facing the risks of no recovery at all after years of litigation. *Id.* ¶¶ 10-14. In contrast to the risk, cost, and delay posed by proceeding to trial, if it is approved, the Settlement will provide certain, substantial, and immediate relief to the Settlement Class. *Id.* ¶ 15. It ensures that Damages Settlement Class Members will receive guaranteed compensation now, provides them with access to valuable and useful Credit Monitoring services and other benefits that may not have been available at trial, and security measures to protect Settlement Class Member's data that may remain with the company. *Id.* Based on the foregoing, it is Class Counsel's well-informed opinion that, given the uncertainty and further substantial risk and expense of pursuing the Action through contested class certification proceedings, trial and appeal, the proposed Settlement is fair, reasonable, and adequate, and in the best interests of the Settlement Class. *Id.* Plaintiffs likewise believe the Settlement is favorable to their fellow Settlement Class members. Accordingly, the substantial costs, risk, and delay of a trial and appeal support a finding that the proposed Settlement is adequate. *Id.*

Finally, the Settlement has received a positive reception from the Settlement Class. The 673 Claim Forms submitted thus far represent an approximate 3.23% claims rate, which exceeds the claims rates seen in most data breach class actions. *See, e.g., In re Wawa, Inc. Data Sec. Litig.*, No. 19-6019, 2024 U.S. Dist. LEXIS 65200 (E.D. Pa. Apr. 9, 2024) (2.56% claims rate "actually compares favorably to the claims rates in other data breach class actions"); *Carter*, 2023 U.S. Dist. LEXIS 210744 at *15 (1.6% claims rate "is in line with claims rates in other data breach class action settlements" and collecting cases with claims rates between 0.83% and "about two

percent"). As such, the claims rate should be seen as a favorable sign that the Settlement Class approves of this Settlement. Likewise, out of 20,829 Damages Settlement Class Members, not one has lodged an objection or opted-out of the Settlement so far. Admin. Decl. ¶ 32. This clearly demonstrates the Settlement has received a very positive reception by the Settlement Class. The unanimous support for this Settlement reaffirms the Court's preliminary conclusion that the Settlement is fair, reasonable and adequate.

## VI.    Court Should Certify the Proposed Settlement Class

Settlement classes are routinely certified in data breach cases.[3] There is nothing unique about this Action that would counsel otherwise. This Court already conditionally certified the Settlement Class. D.E. 48 ¶ 2. Nothing has changed relative to the Rule 23 factors since Preliminary Approval. For the purposes of Settlement, the Settlement Class still satisfies numerosity and commonality, and Plaintiffs meet the requirements for typicality and adequacy. D.E. 46 at 15-16 (providing a detailed analysis of how the instant Settlement Class satisfies the requirements of Rule 23(a)). In addition, common issues predominate, and a class action settlement is the superior means by which to resolve class member claims. *Id.* at 16-17 (discussing how the instant Settlement Class meets the requirements of Rule 23(b)(3)). Moreover, Class Counsel have decades of combined experience vigorously litigating class actions, are well suited to advocate on behalf of the Settlement Class, and as the foregoing section shows a strong result was obtained for the Settlement Class. *See* JD, Exs. 1-2. For these reasons, the Court should finally certify the

---

[3] *See, e.g., Abubaker v. Dominion Dental USA, Inc.*, 2021 U.S. Dist. LEXIS 252202 (E.D. Va. Nov. 19, 2021); *Hutton v. Nat'l Bd. of Examiners in Optometry, Inc.*, 2019 U.S. Dist. LEXIS 120558 (D. Md. July 15, 2019); *In re Equifax Inc. Customer Data Security Breach Litig.*, l:17-md-2800-TWT, 2020 WL 256132 (N.D. Ga. March 17, 2020), *aff'd in relevant part* 999 F.3d 1247 (11th Cir. 2021), *cert. denied sub nom. Huang v. Spector*, 142 S. Ct. 431 (2021), and *cert denied sub nom. Watkins v. Spector*, 142 S. Ct. 765 (2022); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299 (N.D. Cal. 2018); *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 341 F.R.D. 128, 172-74 (D. Md. 2022) (certifying certain statewide classes; Rule 23(f) appeal granted).

Settlement Class for settlement purposes, finally appoint Plaintiffs as Class Representatives, and finally approve Class Counsel's position.

## VII.    Notice to the Settlement Class Complied with Due Process and Rule 23

The Court previously approved the Notice Program and found it satisfied all requirements of due process and Rule 23. *See, e.g.*, Federal Judicial Center, "Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide" (2010) (recognizing the effectiveness of notice that reaches between 70 and 95 percent of the class). The Notice Program, which provided the best notice practicable under the circumstances, has been successfully implemented and reached approximately 98.9% percent of the Settlement Class. *See* Admin Decl. ¶¶ 19, 28 ("In my experience, the reach of the Notice Program was consistent with other court-approved notice programs, was the best notice practicable under the circumstances, and satisfied the requirements of due process"). The Settlement Website allowed visitors to download the Long Form Notice, the Claim Form, and Court documents such as the Complaint and full Agreement, as well as allowing them to submit Claims and address updates electronically, find answers to frequently asked questions, view important dates and deadlines, and contact the Settlement Administrator. *Id.* ¶ 29. The fact that the Settlement Website received at least 87 online claims shows its effectiveness.

## VIII.    APPLICATION FOR ATTORNEYS' FEES, COSTS AND SERVICE AWARDS

**a. The Requested Attorneys' Fees Award is Fair and Reasonable -** When awarding attorneys' fees, the First Circuit follows the common fund doctrine. "Under that doctrine, "attorneys whose efforts lead to the creation of a fund for the benefit of the class are 'entitled to a reasonable attorney's fee from the fund as a whole.'" *In re Neurontin Mktg. & Sales Pracs. Litig.*, 58 F. Supp. 3d 167, 170 (D. Mass. 2014) (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 100 S. Ct. 745, 62 L. Ed. 2d 676 (1980)); *Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 349 (D. Mass. 2015) ("Attorneys in a certified class action may be awarded reasonable fees and costs.").

In contingent fee cases such as this, the "percentage of the fund" approach is appropriate because it is easy to administer, reduces the possibilities of collateral disputes, enhances judicial efficiency, is less taxing on judicial resources, and "better approximates the workings of the marketplace." *In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 307 (1st Cir. 1995) (approving the percentage of fund approach as an acceptable method and recognizing "that use of the [percentage of fund] method in common fund cases is the prevailing praxis [with] . . . distinct advantages"); *see also Carlson v. Target Enter.*, 447 F. Supp. 3d 1, 3 (D. Mass Mar. 23, 2020) ("In the First Circuit, the percentage of fund methodology, . . . is favored and appropriate in common fund cases.").

Here, Plaintiffs seek Court approval of Class Counsel attorneys' fees of 33.33% of the cash Settlement Fund, which equals $200,000.00. Plaintiffs also seek reimbursement of litigation costs totaling $5,177.12. JD ¶ 39. This request is within the range of attorneys' fee requests that have been approved in this judicial district. *See Meaden et al. v. Harborone Bank*, Case No. 1:23-cv-10467-AK (D. Mass. Nov. 14, 2023) ("33.33% of the Settlement Fund is fair and reasonable in light of the nature of this case"); *Fiorentino v. Flosports, Inc.*, Case No. 1:22-cv-11502 (D. Mass. March 5, 2024) (awarding one-third of the settlement fund); *Klein, et al. v. Bain Capital Partners, LLC*, et al., 07-cv-12388-WGY (D. Mass. Feb. 2, 2015) (awarding 33.33% of settlement fund); *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 77-82 (D. Mass. Sept. 28, 2005) (same); *In re Solodyn Antitrust Litig.*, 2018 U.S. Dist. LEXIS 244677, at *11 (D. Mass. July 18, 2018) (same); *In re Asacol Antitrust Litig.*, 2017 U.S. Dist. LEXIS 221904, at *18 (D. Mass. Dec. 7, 2017) (same); *In re Prograf Antitrust Litig.*, 2015 U.S. Dist. LEXIS 199792, 2015 WL 13908415, at *13-14 (D. Mass. May 20, 2015) (same); *see also Bacchi v. Mass. Mut. Life Ins. Co.*, 2017 U.S. Dist. LEXIS 184926, at *10 (D. Mass. Nov. 8, 2017) ("Although the First Circuit has not set a presumptive benchmark for percentage of fund awards, other courts in the Circuit have noted that such

benchmark has been between twenty to thirty-five percent."); *In re Neurontin Mktg. & Sales Practices Litig.*, 58 F. Supp. 3d 167, 172 (D. Mass. Nov. 10, 2014) ("[N]early two-thirds of class action fee awards based on the percentage method were between 25% and 35% of the common fund.").

In the Preliminary Approval Order, the Court already found Plaintiffs' intention to seek no more than 33.33% of the Settlement Fund in attorneys' fees as reasonable. D.E. 48 at 7 ("The terms of the Settlement…are preliminarily approved…as the Court will likely be able to find that the Settlement is fair, reasonable, and adequate"). The Court's determination that "the Settlement is fair, reasonable, and adequate" includes Plaintiffs' intention to seek 33.33% for attorney's fees. *Id.* As Plaintiffs demonstrate below, Class Counsel's request is reasonable.

**b. Relevant Factors in this District Support the Requested Fees Award -** When determining the reasonableness of attorneys' fees, courts in this District generally consider "the size of the fund and number of persons benefitting from it; the skill, experience, and efficiency of class counsel; the complexity of the litigation and its duration; the risks involved with the litigation; the amount of time spent on the case by class counsel; awards in comparable cases; and public policy considerations." *Mongue v. Wheatleigh Corp.*, 2024 U.S. Dist. LEXIS 69928, at *13 (D. Mass. Apr. 16, 2024). Class Counsel employs those factors, and as shown below, they support the requested 33.33% fee as fair and reasonable.

**1. Size of the Fund and the Number of Class Members Benefitted -** Class Counsel secured a favorable $600,000.00 non-reversionary all cash common Settlement Fund. This amount equates to approximately $29.80 per Damages Settlement Class member, a number that as shown above meets or exceeds the results achieved in other recent data breach settlements.

In addition to the fund size, when looking at the quality of Class Counsel's representation courts typically find the absence or near absence of objections from the class to the attorneys' fees

request supports the reasonableness of those fees. *See Bezdek*, 79 F. Supp. 3d at 347 (observing the "overwhelmingly positive" reaction of the class, which yielded only 23 opt-outs and 3 objections); *In re Puerto Rico Cabotage Antitrust Litig.*, 815 F. Supp. 2d 448, 473 (D. P.R. Sept. 13, 2011) ("Three objections, with none of the three challenging the amount of the Settlements, out of a potential Class of 61,854, certainly weighs in favor of approval."); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 374 (S.D.N.Y. 2002) ("The reaction by members of the Class is entitled to great weight by the Court."). Here no Settlement Class Member has objected to Class Counsel's requested fee. Admin. Decl. ¶ 32. Moreover, the absence of opt-outs demonstrates the Settlement Class is pleased with the Settlement and takes no issue with Class Counsel receiving 33.33% of the Settlement Fund. While the Objection and Opt-Out Deadlines have not yet passed, the Settlement Class' reception thus far strongly suggests their approval of the Settlement and the proposed attorneys' fee award.

2.    **Class Counsel's Skill, Expertise, and Efficiency -** In evaluating the skill and efficiency of class counsel, courts determine whether counsel, "had a sufficient understanding of the merits of the case in order to engage in informed negotiations, particularly where plaintiffs' counsel are skilled and experienced in consumer class action litigation[.]" *Bezdek*, 79 F. Supp. 3d at 348, aff'd, 809 F.3d 78 (1st Cir. 2015). Indeed, Class Counsel's skill and experience in complex class action litigation weigh in favor of the requested attorneys' fee award. Class Counsel's background and the background of the supporting attorneys and staff of Strauss Borrelli PLLC and Kopelowitz Ostrow P.A. demonstrate that Class Counsel is experienced in the highly specialized field of class action litigation – particularly data breach class action litigation – and are well-credentialed and equal to the difficult and novel tasks at hand. JD ¶ 2 and Exs. 1-2 thereto (listing qualifications of Class Counsel). Class Counsel's attorneys' fee request is commensurate with that experience, which was leveraged here to procure the Settlement via early resolution of the Action.

3. **Complexity and Duration of the Litigation -** Even though Class Counsel is confident Plaintiffs' claims would prevail at trial, they anticipated facing several challenges in prosecuting this Action, which led, in part, to the negotiations that culminated in this Settlement. JD ¶¶ 9-16. "Historically, data breach cases have had great difficulty in moving past the pleadings stage and receiving class certification." *Pfeiffer v. Radnet, Inc.*, 2022 U.S. Dist. LEXIS 125933, at *6-7 (C.D. Cal. Feb. 15, 2022). As a result, Settlement Class Members may never have secured relief, financial or otherwise, absent this Settlement, and would have otherwise endured lengthy, expensive, and arduous litigation, during which they would still be exposed to the risk of identity theft. Accordingly, the requested fee considers the novelty and complex nature of data breach class actions and appropriately compensates Class Counsel's ability to resolve this matter efficiently while recovering the maximum amount available to the Settlement Class in a timely manner.

4. **Contingency and Risky Nature of Litigation -** The uncertain nature of contingency fees requires counsel to assume more risk than in cases where compensation is based on billable hours. The risk involved in prosecuting a class action is an important consideration in determining an appropriate attorneys' fee award and is intended to recognize that cases taken on a contingent fee basis entail risk of non-payment for the attorneys who prosecute them. This factor also embodies an assumption that contingency work is entitled to greater compensation than non-contingency work. *In re Lupron Mktg. & Sales Practices Litig.*, 2005 U.S. Dist. LEXIS 17456, at *15 (D. Mass. Aug. 17, 2005). ("[m]any cases recognize that the risk assumed by an attorney is perhaps the foremost factor in determining an appropriate fee award").

Here, Class Counsel undertook this Action on a contingent basis, advancing costs and risking nonpayment. JD ¶ 26. They also have foregone the ability to devote time to other cases, all at the substantial risk it would yield no (or very little) recovery and leave them uncompensated. *Id.* ¶ 27. Despite these substantial risks, Class Counsel chose to represent Plaintiffs on a

17

contingency basis. *See Pfeiffer*, 2022 U.S. Dist. 125933, at *7 ("Because Class Counsel took this case on a contingency basis in a risky and still-developing area of law, this factor weighs in favor of the proposed attorneys' fee award."); *see also Brulee v. Dal Global Servs., LLC*, 2018 U.S. Dist. LEXIS 211269, at *28 (C.D. Cal. Dec. 13, 2018) ("Attorneys are entitled to a larger fee award when their compensation is contingent in nature"). Because Class Counsel invested substantial time, effort, and resources into the litigation of this risky and uncertain case with no guarantee or promise of return on their investment, such a risk warrants an appropriate fee. *George v. Acad. Mortg. Corp.*, 369 F. Supp. 3d 1356, 1380 (N.D. Ga. Mar. 20, 2019) ("a contingency fee arrangement often justifies an increase in the award of attorney's fees.").

5.    **Class Counsel's Time and Lodestar are Reasonable -** Class Counsel has devoted substantial time to efficiently prosecuting Plaintiffs' claims, resulting in a favorable outcome. They have invested a total of 152 hours, yielding a current lodestar of $107,941.00, with a lodestar multiplier of approximately 1.85, supporting the requested fee. *See* JD ¶¶ 32, 29, 30. *See, e.g., Mooney v. Domino's Pizza, Inc.*, 2018 U.S. Dist. LEXIS 232959 (D. Mass. Jan. 23, 2018) (4.77 multiplier); *Gordan v. Mass. Mut. Life. Ins. Co.*, 2016 U.S. Dist. LEXIS 195935 (D. Mass. Nov. 3, 2016) (3.66 multiplier); *New England Carpenters Health Ben. Fund, et al. v. First Databank, Inc.*, 2009 U.S. Dist. LEXIS 68419 (D. Mass. Aug. 3, 2009) (8.3 multiplier). Class Counsel will also spend an estimated 20 additional hours on the Final Approval Hearing and post-settlement tasks. JD ¶ 33. Courts generally defer to counsel's professional judgment on reasonable time spent. *See Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008); *see also Rodriguez v. County of L.A.*, 96 F. Supp. 3d 1012, 1024 (C.D. Cal. Dec. 26, 2014) ("Courts generally accept the reasonableness of hours supported by declarations of counsel.").

6.    **Awards in Similar Cases -** Courts across the country routinely award similar attorneys' fees in data breach class actions involving non-reversionary all cash settlement funds.

*See, e.g., Kondo v. Creative Services, Inc.*, No. 1:22-cv-10438-DJC, (D. Mass. Sept. 7, 2023) (approving one-third of the fund); *Ford v. Takeda Pharms. U.S.A., Inc.*, 2023 U.S. Dist. LEXIS 93286, at *8 (D. Mass. Mar. 31, 2023) (same).[4] "Courts routinely hold that one-third of a common fund is an appropriate attorneys' fees award in [a] class action settlement[.]" *Koszyk v. Country Fin.*, 2016 U.S. Dist. LEXIS 126893, at *10 (N.D. Ill. Sept. 16, 2016). The 33.33% fee requested here is consistent with other awards in this District and across the country.

      **7.   Public Policy Considerations -** There is a "significant societal interest in obtaining redress" and in holding defendants accountable through class action litigation. *In re Lupron*, 2005 U.S. Dist. LEXIS 17456, at *23. Indeed, lawsuits that curtail violative conduct on a widespread basis provide a valuable service in safeguarding "the welfare of the general public." *In re Neurontin Mktg.*, 58 F. Supp. 3d at 171. Here, the Settlement serves an important public policy concern by protecting consumers' interests in the privacy and confidentiality of their personal information and by causing Defendant to confirm its procedures for protecting these interests. Accordingly, compensating Class Counsel appropriately for prosecuting this action serves this important policy goal.

    **c.  Class Counsel's Costs are Reasonable and Should Be Reimbursed -** "Lawyers who recover a common fund for a class are entitled to reimbursement of litigation expenses that were reasonably and necessarily incurred in connection with the litigation." *Ford v. Takeda Pharms. U.S.A., Inc.*, 2023 U.S. Dist. LEXIS 93286, at *7-8 (D. Mass. Mar. 31, 2023) (quotation omitted). To be recoverable, the costs must be "adequately documented and reasonably and appropriately

---

[4] *See also Abrams, et al. v. The Savannah College of Art and Design Inc.*, No. 1:22-cv-04297-LMM (N.D. Ga. Sept. 19, 2023) (same); *Phelps, et al. v. Toyotetsu North America*, No. 6:22-cv-00106-CHB-HA (E.D. Ken. Oct. 24, 2023) (same); *In re: Forefront Data Breach Litigation*, Case No. 1:21-cv-000887-LA, (E.D. Wis. Mar. 22, 2023) (same); *Davidson v. Healthgrades Operating Company, Inc.*, Case No. 1:21-cv-01250-RBJ, (D. Colo. Aug. 22, 2022) (same).

incurred in the prosecution of the class action." *In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 108 (D. N.J. Sept. 27, 2001). Here, Class Counsel incurred $4,087.64 in costs that were necessary and incidental to the representation of the Class. JD ¶ 39. These well-documented costs include court filing fees, service fees, legal research, photocopies, and postage, which were modest, reasonable, and necessary for the prosecution of the case. *Id.*; s*ee also Hill*, 2014 U.S. Dist. LEXIS 179702, at *53-54 (reimbursing litigation costs for court fees, legal research, and experts).

**d. The Requested Service Awards Should Be Approved -** Class Representatives respectfully request approval of Service Awards in the amount of $2,500.00 for each of them in recognition of the burdens they assumed in instituting the actions, spending time communicating with Class Counsel, fulfilling litigation responsibilities, and taking on the risks inherent with publicly attaching themselves to the lawsuit. *See, e.g., In re Relafen*, 231 F.R.D. at 82 ("Because a named plaintiff is an essential ingredient of any class action, an incentive award can be appropriate to encourage or induce an individual to participate in the suit.") (citation omitted). "In granting incentive awards to named plaintiffs in class actions, courts consider not only the efforts of the plaintiffs in pursuing the claims, but also . . . rewarding representative plaintiffs for being instrumental in obtaining recoveries for persons other than themselves." *Bussie v. Allmerica Fin. Corp.*, 1999 U.S. Dist. LEXIS 7793, at *11-12 (D. Mass. May 19, 1999) (approving $5,000 each for the four representative plaintiffs). Here, Plaintiffs have been actively involved in the litigation and have pursued the interests of the Settlement Class. *See* JD ¶ 22. Accordingly, given Plaintiffs' time and efforts in supporting the litigation, combined with the risks and burdens of serving as Class Representatives, Plaintiffs' requests for Service Awards should be granted.

## IX.    CONCLUSION

For all the foregoing reasons, the Court should grant Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement and Application for Attorneys' Fees, Costs, and Service Awards. A proposed Final Approval Order is attached for the Court's convenience as ***Exhibit D***.

Dated: May 27, 2025

Respectfully submitted,

*/s/ Jeff Ostrow*
Jeff Ostrow *(pro hac vice)*
KOPELOWITZ OSTROW P.A.
1 West Las Olas. Blvd., Ste. 500
Fort Lauderdale, FL 33301
Telephone: 954.332.4200
ostrow@kolawyers.com

Raina Borrelli (*pro hac vice*)
STRAUSS BORRELLI PLLC
980 N. Michigan Avenue, Suite 1610
Chicago, Illinois 60611
Telephone: 872.263.1100
raina@straussborrelli.com

*Interim Co-Lead Counsel for Plaintiffs and the Putative Class*

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 27, 2025, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using CM/ECF. Copies of the foregoing document will be served upon interested counsel via transmission of Notices of Electronic Filing generated by CM/ECF.

*s/ Jeff Ostrow*